IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION

| | | |
|---|---|---|
| **TRISTAN DI MONTENEGRO,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 4:22-cv-476-ALM-KPJ |
| | § | |
| **KATHLEEN MURPHY,** *et al.*, | § | |
| | § | |
| Defendants. | § | |

### REPORT AND RECOMMENDATION
### OF UNITED STATES MAGISTRATE JUDGE

Pending before the Court are Defendants Phillip Gonzalo Ayala ("Mr. Ayala") and Kathleen Murphy's ("Ms. Murphy" and, together with Mr. Ayala, the "DPS[1] Defendants") Motion to Dismiss (the "DPS Motion") (Dkt. 17) and Defendant Matthew DeSarno's ("Mr. DeSarno" and, together with Mr. Ayala and Ms. Murphy, "Defendants") Motion to Dismiss (the "DeSarno Motion") (Dkt. 27). For the reasons that follow, the Court recommends the DPS Motion (Dkt. 17) and the DeSarno Motion (Dkt. 27) be **GRANTED**.

I.   BACKGROUND

On June 6, 2022, Plaintiff Tristan di Montenegro ("Plaintiff"), proceeding *pro se* and *in forma pauperis*, filed a complaint against Defendants (the "Complaint") (Dkt. 1).[2] *See id.* In the Complaint (Dkt. 1), Plaintiff details various events he attributes to the Federal Bureau of Investigation (the "FBI"). *See generally id.* Plaintiff's allegations begin in the early 2000s when his father allegedly became a "Confidential Human Source (CHS) for the FBI," forged a $30,000

---

[1] Mr. Ayala and Ms. Murphy are employed by the Texas Department of Public Safety. *See* Dkt. 1 at 8; *see generally* Dkt. 17.

[2] The Court refers to CM/ECF pagination rather than internal pagination for all citations.

insurance check made out in Plaintiff's name, and then kept more than $200,000 of Plaintiff's money. *Id.* at 9–10. Plaintiff alleges he later moved to Brazil and in 2003, he was approached by "several different locals in Brazil" who informed Plaintiff he was "in danger" because the FBI was "after [him]." *Id.* at 10. Plaintiff alleges that in 2002 or 2003 "the FBI had convinced the domestic security apparatus in Brazil that [Plaintiff] was a 'threat' and a 'potential Al Qaeda contact.'" *Id.* Plaintiff alleges he was arrested in Brazil due to the FBI's false statements and had to return to the United States due to fear for his safety following a period of false imprisonment in Brazil. *See id.* at 10–11.

Plaintiff alleges he returned to Miami, Florida, and enrolled in a master's degree program in 2006. *See id.* at 12. Plaintiff asserts that during his studies, several "high ranking (retired) officers in the US Military and active members of the intelligence community (IC) were impressed with [Plaintiff's] analytical and writing skills . . . ." *Id.* at 12. Plaintiff alleges that in 2007, he assisted the FBI with an investigation apprehending an "international crime suspect after identifying [the suspect] from a facial sketch in an on[l]ine publication . . ." and had been unaware of the FBI's previous false statements against him. *Id.* at 13. Plaintiff asserts that in 2008, he legally changed his name and has since never used his birth name "for any purpose." *Id.* at 14. Plaintiff asserts that in 2014, he "learned the FBI had opened several disgusting social networking accounts with images of a person who was an extremely seedy doppelganger of [himself] – *in* [Plaintiff's] *birth-name, which* [he] *had not used since 2008*." *Id.* Plaintiff alleges that for several years, the FBI has continued to disseminate "grotesque" information about Plaintiff to his family and others in the various countries and states in which Plaintiff has lived, resulting in the destruction of Plaintiff's reputation. *Id.* at 18; *see also id.* at 22 ("[Plaintiff] later discovered that the FBI had contacted most of the people [he has] known from 1975 onwards, including childhood friends –

and engaged in what [Plaintiff] can only refer to as a scorched-earth, defamation and disparagement campaign meant to destroy [Plaintiff] – and it rigorously continues until this day."). Plaintiff alleges that on several occasions, in various countries and states, he has been physically attacked, his home has been vandalized, and he has been followed and/or asked questions by persons previously unknown to him. *See, e.g.*, *id.* at 24 ("I[n] late 2015 I relocated to Springfield, Virginia. Within several hours of moving into my new apartment, a neighbor whom I had never spoken with before, approached me and began the conversation by asking me if I was the guy that was chased out of Miami by law enforcement . . . . Everywhere I go I get doxxed by the FBI and JTTF."). Plaintiff alleges the FBI has deliberately sabotaged him in various other ways, such as causing his dissertation proposal to be "'peppered' . . . with absolute gibberish." *Id.* at 23. Plaintiff attributes these actions to what he describes as the FBI's "disruption" protocol. *See id.* at 25.

In 2019, Plaintiff moved to The Colony, Texas, where Plaintiff alleges he continues to be harassed by the FBI. *See id.* at 28–36. Plaintiff alleges he obtained employment at a car dealership, and "[f]rom the moment [he] arrived at work, [Texas Department of Public Safety ("DPS")] personnel driving both marked and unmarked Texas Highway Patrol vehicles continuously cruised the parking lot, some stopping their vehicles directly in front of [him] and angrily glaring at [him] in open displays of intimidation." *Id.* at 29. Plaintiff alleges that thereafter, he "went into the FBI's Dallas Field Office to lodge a complaint with regards to the harassment, stalking and tortuous interference. One of the field agents asked [him] what [he] 'hoped to accomplish' by [his] visit. [Plaintiff] responded 'tell Special Agent in Charge (SAIC) DeSarno to cease and desist with the harassment and stalking (A.K.A. 'Disruption')." *Id.* at 30. Plaintiff allegedly later "returned to the Dallas Field Office yet again to lodge another grievance. [Plaintiff] told the agent that the FBI,

3

JTTF, and InfraGard were out of control, and once again told [the agent] to tell SAIC Matthew DeSarno to 'cease and desist.'" *Id.*

Plaintiff alleges that in 2019, he wrote a letter of complaint to Ms. Murphy, Deputy Counsel of DPS, in which he "explained that not only were Texas-based Fusion Centers disseminating [his] personal information, but that they were also conveying [his] location in real time, including [his] image and vehicle descriptions to civilians who work hand-in-hand with the [DPS, FBI, InfraGard, and JTTF]." *Id.* at 31. Ms. Murphy allegedly responded that she has no control or authority over Fusion Center operations. *See id.* Mr. Ayala, DPS Inspector General, allegedly sent Plaintiff correspondence indicating DPS has no authority with respect to the Fusion Centers. *See id.* at 32. Plaintiff contends these respective responses of Ms. Murphy and Mr. Ayala are inaccurate, as DPS does have authority over the Fusion Centers. *Id.* at 32–33.

Plaintiff asserts a cause of action under 42 U.S.C. § 1983 against DPS Defendants, each in their individual capacities, for alleged retaliation against Plaintiff for the exercise of his First Amendment rights, violation of Plaintiff's equal protection rights under the Fourteenth Amendment, and denial of Plaintiff's due process rights under the Fourteenth Amendment. *See* Dkt. 1 at 44–45. Plaintiff asserts a *Bivens*[3] claim against Mr. DeSarno for alleged retaliation against Plaintiff for the exercise of his First Amendment rights and failure to supervise. *See id.* at 45–46, 51. Plaintiff also asserts multiple state law claims against DPS Defendants including tortious interference, "gross business disparagement", and defamation. *See id.* at 45–47. Plaintiff requests actual, assumed, and punitive damages and various forms of injunctive relief. *See id.* at 47–51.

On August 26, 2022, DPS Defendants filed the DPS Motion (Dkt. 17), wherein DPS Defendants argue Plaintiff's claims must be dismissed pursuant to 28 U.S.C. § 1915, Plaintiff's

---

[3] *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971).

lack of standing to bring this suit, DPS Defendants' qualified immunity, and Plaintiff's failure to state a claim upon which relief can be granted. *See generally* Dkt. 17. On October 17, 2022, Mr. DeSarno filed the DeSarno Motion (Dkt. 27), wherein Mr. DeSarno argues Plaintiff's claims should be dismissed because Plaintiff has not timely effected service upon Mr. DeSarno, Plaintiff has failed to state a *Bivens* claims against Mr. DeSarno, the United States has not waived sovereign immunity for Plaintiff's tort claims, and the Complaint fails to state a claim upon which relief can be granted. *See generally* Dkt. 27. On November 8, 2022, Plaintiff filed a "Motion for Submission of Additional Exhibits" (the "Motion for Submission of Additional Exhibits") (Dkt. 31). *See* Dkt. 31. Attached to the Motion for Submission of Additional Exhibits (Dkt. 31) is a "Response to Opposing Counsel(s)" (Dkt. 31-1), in which Plaintiff argues service was promptly effected on Mr. DeSarno, a lawsuit Plaintiff previously brought in another federal court was not dismissed as frivolous, and overall, the DeSarno Motion (Dkt. 27) is "rife with false statements and denigrating commentary, [and] is nothing more than a shameful and unprofessional ad hominem attack" on Plaintiff. Dkt. 31-1 at 2–4.[4] On January 26, 2023, Plaintiff filed his response (Dkt. 37) to the DPS Motion (Dkt. 17), wherein Plaintiff represents he "STRONGLY OPPOSE[s] the TxDPS defendants motion to dismiss under no uncertain terms." Dkt. 37 at 2.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) allows a defendant to move for dismissal of an action if the plaintiff fails to state a claim upon which relief can be granted. *See* FED. R. CIV. P. 12(b)(6). Because dismissals under Rule 12(b)(6) are viewed with disfavor, the court must accept as true all well-pleaded facts, "even if doubtful or suspect," contained in the plaintiff's complaint

---

[4] Attached to the Motion for Submission of Additional Exhibits (Dkt. 31) is a copy of an article entitled "Unleashed and Unaccountable, The FBI's Unchecked Abuse of Authority." *See* Dkts. 31-2, 31-3, 31-4.

and view them in the light most favorable to the plaintiff. *Peña Arita v. United States*, 470 F. Supp. 3d 663, 680 (S.D. Tex. 2020) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir. 1996). However, courts are "not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). A claim will survive an attack under Rule 12(b)(6) if, considering all well-pleaded facts, the complaint states a plausible claim for relief, rather than "the mere possibility of misconduct." *Id.* at 679. The well-pleaded facts must allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* At 678. "Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id*.

At the motion to dismiss stage, "[t]he court's review is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint." *Allen v. Vertafore, Inc.*, 28 F.4th 613, 616 (5th Cir.), *cert. denied*, 143 S. Ct. 109 (2022) (quoting *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010)).

The Court is also mindful that it "must construe the pleadings of pro se litigants liberally to prevent the loss of rights due to inartful expression." *Perez v. Dall. Cnty. Jail*, No. 3:20-cv-01761, 2022 WL 1215781, at *2 (N.D. Tex. Mar. 31, 2022) (internal citations omitted); *see also Andrade v. Gonzales*, 459 F.3d 538, 543 (5th Cir. 2006). "But 'liberal construction does not require that the Court . . . create causes of action where there are none.'" *Rolan v. LaSalle Sw. Corr.*, No. 3:20-cv-2842, 2021 WL 5568168, at *3 (N.D. Tex. Nov. 1, 2021) (quoting *Smith v. CVS Caremark Corp.*, No. 3:12-cv-2465, 2013 WL 2291886, at *8 (N.D. Tex. May 23, 2013)).

6

### III.  ANALYSIS

42 U.S.C. § 1983 provides a cause of action against persons who, under color of state law, deprive a plaintiff "of any rights, privileges, or immunities secured by the Constitution." *Morgan v. Chapman*, 969 F.3d 238, 245 (5th Cir. 2020) (quoting 42 U.S.C. § 1983). To state a claim under Section 1983, "a plaintiff must allege facts showing that a person, acting under color of state law, deprived the plaintiff of a right, privilege or immunity secured by the United States Constitution or the laws of the United States." *Martinez v. City of North Richland Hills*, 846 F. App'x 238, 241 (5th Cir. 2021) (per curiam) (quoting *Bryant v. Mil. Dep't of Miss.*, 597 F.3d 678, 686 (5th Cir. 2010)). In a Section 1983 suit, "'a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution.'" *Floyd v. City of Kenner*, 351 F. App'x 890, 897 (5th Cir. 2009) (per curiam) (quoting *Iqbal*, 556 U.S. at 662). A *Bivens* action is the counterpart of a suit brought under Section 1983 for those acting under color of federal law. *See Abate v. S. Pac. Transp. Co.*, 993 F.2d 107, 110 n. 14 (5th Cir. 1993).

For the reasons that follow, the Court finds Plaintiff cannot state a Section 1983 claim against DPS Defendant or a *Bivens* claim against Mr. DeSarno.[5]

**A. DPS Defendants**

In reviewing the Complaint (Dkt. 1), it appears Plaintiff's only allegation as to DPS Defendants is that DPS Defendants allegedly lied to Plaintiff by stating DPS does not have authority over Texas Fusion Centers. On the basis of this alleged conduct, Plaintiff asserts a Section 1983 claim under First Amendment retaliation, equal protection, failure to supervise, due process, and conspiracy theories of liability. For the following reasons, the Court finds Plaintiff cannot state a Section 1983 claim under any of his asserted theories of liability.

---

[5] Because the Court finds that Plaintiff's case should be dismissed on this ground, the Court does not reach the other arguments raised by DPS Defendants and Mr. DeSarno.

1. *First Amendment Retaliation*

"The law is settled that as a general matter the First Amendment prohibits government officials from subjecting an individual to retaliatory actions . . . for speaking out." *Hartman v. Moore*, 547 U.S. 250, 259 (2006) (citing *Crawford–El v. Britton*, 523 U.S. 574, 592 (1998)); *see also Perry v. Sindermann*, 408 U.S. 593, 597 (1972) (noting the government may not punish a person or deprive him of a benefit on the basis of his "constitutionally protected speech"). To plead a First Amendment retaliation claim, the plaintiff must demonstrate: (1) he was engaged in constitutionally protected activity; (2) the state actor's action caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) the state actor's adverse actions were substantially motivated against the plaintiff's exercise of constitutionally protected activity. *Batyukova v. Doege*, 994 F.3d 717, 730 (5th Cir. 2021) (citing *Alexander v. City of Round Rock*, 854 F.3d 298, 308 (5th Cir. 2017)). As explained below, while Plaintiff sufficiently alleges the first element, he cannot allege the second or third elements.

    i.    *Whether Plaintiff Was Engaged in Constitutionally Protected Activity*

There is little doubt that filing a grievance against a government official is a form of "speaking out" that is protected by the First Amendment. *See Huff v. Thaler*, 518 F. App'x 311, 312 (5th Cir. 2013) (per curiam) ("Filing a grievance is a constitutionally protected activity . . . ." (citing *Woods v. Smith*, 60 F.3d 1161, 1164 (5th Cir. 1995))); *Lott v. Andrews Ctr.*, 259 F. Supp. 2d 564, 568 (E.D. Tex. 2003) ("The First Amendment right to petition for redress of grievances is 'among the most precious of the liberties safeguarded by the Bill of Rights.'" (quoting *United Mine Workers of Am., Dist. 12 v. Ill. State Bar Ass'n*, 389 U.S. 217, 222 (1967))). Moreover, DPS Defendants do not appear to dispute Plaintiff was engaged in constitutionally protected activity

when he filed a complaint against DPS. *See* Dkt. 17 at 5–6. Accordingly, the Court finds that Plaintiff has sufficiently alleged he was engaged in constitutionally protected activity.

> ii. *Whether a Person of Ordinary Firmness Would Be Chilled from Engaging in Protected Speech*

"The Fifth Circuit has found that evidence of 'concrete' injuries may chill protected speech but non-concrete injuries or injuries that are relatively minor do not." *Boggs v. Krum Indep. Sch. Dist.*, 376 F. Supp. 3d 714, 725 (E.D. Tex. 2019) (citing *Keenan v. Tejeda*, 290 F.3d 252, 259 (5th Cir. 2002)). Here, the only statement in the Complaint regarding possible harm to Plaintiff is, "Furthermore, [DPS] was unable to provide me with any documentation proving that [Mr. Ayala] initiated any type of investigation whatsoever with respect to my 2019 complaints to [DPS]." Dkt. 1 at 32. Courts have found that failure to investigate a plaintiff's criminal complaint would not chill a person of ordinary firmness. *See Bailey v. City of Jasper*, No. 1:12-cv-153, 2012 WL 4969126, at *4 (E.D. Tex. Sept. 24, 2012), *R. & R. adopted*, 2012 WL 4970809 (E.D. Tex. Oct. 17, 2012) (citing *Walbert v. Wichita Police Dep't*, Civ. No. 10–1234, 2011 WL 2473143 (D. Kan. June 21, 2011)). Accordingly, Plaintiff cannot demonstrate the second element on this basis.

Further, Plaintiff cannot plausibly allege that the alleged misrepresentation to Plaintiff regarding the jurisdiction of DPS over Texas Fusion Centers had any adverse effect on Plaintiff, let alone an injury that would chill a person of ordinary firmness from exercising his First Amendment rights. *See Wright v. TDCJ-CID Dir.*, No. 6:21CV280, 2022 WL 1192785, at *4 (E.D. Tex. Jan. 31, 2022), *R. & R. adopted*, 2022 WL 636723 (E.D. Tex. Mar. 3, 2022), *appeal dismissed*, No. 22-40186, 2022 WL 4484226 (5th Cir. June 21, 2022) ("Moreover, nothing in the complaint establishes that the alleged mishandling of his grievances caused [the p]laintiff any further injury, much less an injury that would 'chill a person of ordinary firmness' from exercising his rights. A retaliation claim under Section 1983 must be based on a 'more tangible adverse

9

action.'" (quoting *Slegelmilch v. Pearl River Cnty. Hosp. & Nursing Home*, 655 F. App'x 235, 239 (5th Cir. 2016))); *Harmon v. Beaumont Indep. Sch. Dist.*, No. 1-12-CV-571, 2014 WL 11498077, at *5 (E.D. Tex. Apr. 7, 2014), *aff'd*, 591 F. App'x 292 (5th Cir. 2015) ("Defendant['s] . . . phone call resulted in no adverse consequences for Plaintiff . . ., and indeed, no consequence other than discussion with her supervisor. This would not chill a person of ordinary firmness."); *Black Farmers & Agriculturists Ass'n, Inc. v. Hood*, No. 3:13CV763, 2014 WL 935147, at *11 (S.D. Miss. Mar. 10, 2014), *aff'd*, 585 F. App'x 306 (5th Cir. 2014). Thus, Plaintiff cannot allege a person of ordinary firmness would be chilled from engaging in protected speech on the basis of DPS Defendants' alleged misrepresentations.

   *iii.* *Whether the State Actors' Adverse Actions Were Substantially Motivated Against Plaintiff's Exercise of Constitutionally Protected Activity*

Even if the Court assumes DPS Defendants took an adverse action against Plaintiff, the "substantially motivated" element requires a showing that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (internal citations omitted). Conclusory allegations of retaliation without a specific factual basis will not suffice. *See Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995). Plaintiff does not allege DPS Defendants even had knowledge of any of these alleged actions, many of which preceded Plaintiff's move to Texas, and Plaintiff's allegations almost entirely relate only to the FBI. *See Cruz v. Archie*, No. CV 5:12CV86, 2013 WL 3544764, at *10 (E.D. Tex. July 12, 2013) ("In this case, [the plaintiff] has set forth no specific facts at all to show that he was the victim of retaliation, much less that any defendant had retaliatory intent or that but for this intent, the harms of which he complains would not have occurred."). As such, Plaintiff cannot allege DPS Defendants' actions were "substantially motivated against" his constitutionally protected speech. *Keenan*, 290 at 258.

As Plaintiff cannot demonstrate the second and third elements of his First Amendment retaliation claim, the Court finds Plaintiff cannot state a claim on this ground.

2. *Equal Protection*

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *Duarte v. City of Lewisville*, 858 F.3d 348, 353 (5th Cir. 2017) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432 (1985)). To establish an equal protection claim, Plaintiff must first show that "two or more classifications of similarly situated persons were treated differently." *Gallegos–Hernandez v. United States*, 688 F.3d 190, 195 (5th Cir. 2012) (per curiam) (citation omitted).

The Complaint is entirely devoid of any factual allegation that two or more classifications of similarly situated persons were treated differently, either by DPS Defendants or anybody else. *See Cavazos v. Philippus*, 273 F.3d 1096, 1096 (5th Cir. 2001) (per curiam) ("[The plaintiff's] equal protection claim was also meritless because he has failed to allege[] specifically how 'similarly situated' persons were treated differently from him." (citing *Mayaab v. Johnson*, 168 F.3d 863, 870 (5th Cir. 1999))). As such, the Court finds Plaintiff cannot state a claim on this ground.

3. *Failure to Supervise*

"Section 1983 does not create supervisory or respondeat superior liability." *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002) (internal citations omitted). "The individual officials may be liable only for implementing a policy that is 'itself [ ] a repudiation of constitutional rights' and 'the moving force of the constitutional violation.'" *Id.* (quoting *Grandstaff v. City of Borger*, 767 F.2d 161, 169, 170 (5th Cir. 1985)).

Plaintiff generally claims DPS Defendants "failed to supervise those who harassed me." Dkt. 1 at 44. As there is no supervisory liability under Section 1983, Plaintiff cannot state a claim on this ground. *See Russell v. Jackson*, No. 1:22-CV-171, 2022 WL 18456878, at *3 (E.D. Tex. May 11, 2022), *R. & R. adopted*, 2023 WL 375940 (E.D. Tex. Jan. 23, 2023) ("Only the direct acts or omissions of government officials, not the acts of subordinates, will give rise to individual liability under § 1983." (citing *Alton v. Tex. A & M Univ.*, 168 F.3d 196, 200 (5th Cir. 1999))). Furthermore, Plaintiff does not allege DPS Defendants implemented a policy that violated his constitutional rights. Accordingly, Plaintiff cannot state a failure to supervise claim against DPS Defendants.

  4.  *Due Process*

"[I]n § 1983 suits alleging a violation of the Due Process Clause of the Fourteenth Amendment . . . [p]laintiffs must (1) assert a protected 'liberty or property' interest and (2) show that they were deprived of that interest under color of state law." *Doe v. Rains Cnty. Ind. Sch. Dist.*, 66 F.3d 1402, 1406 (5th Cir. 1995).

In reviewing the Complaint (Dkt. 1), it appears the only factual allegations related to a deprivation of due process claim are as follows:

> In my specific case, [threatening or coercing attorneys who might represent Plaintiff] has been one of the FBI's most favored "modi operandi" with me in eight countries: create legal difficulties for me, engage in tortuous interference to destroy my finances via grotesque, "scorched earth" defamation and disparagement campaigns, and then coerce or threaten any attorneys I contact (in an attempt to resolve the issues that the FBI has created for me) essentially depriving me my right to legal counsel and due process.

Dkt. 1 at 4 n. 10. Plaintiff has not pleaded a due process claim against DPS Defendants, as he has not identified any conduct *on the part* of DPS Defendants which led to the deprivation of a liberty interest. *See Washington-Garrett v. Bonner*, 196 F.3d 1257, 1257 (5th Cir. 1999) (per curiam)

(holding conclusory statements and alleged injury to reputation were not sufficient to support a due process claim) (citation omitted). As such, Plaintiff cannot state a claim on this ground.

5. *Conspiracy*

Plaintiff asserts conspiracy claims related to the four theories of liability above. "A conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act, but a conspiracy claim is not actionable without an actual violation of section 1983." *Hale v. Townley*, 45 F.3d 914, 920 (5th Cir. 1995) (internal quotations omitted).

For the reasons articulated above, the Court finds Plaintiff cannot state a Section 1983 claim. *See Charles v. Castro*, No. 5:20CV184, 2022 WL 2734041, at *5 (E.D. Tex. Feb. 18, 2022), *R. & R. adopted*, No. 5:20-CV-00184-RWS, 2022 WL 2132531 (E.D. Tex. June 14, 2022) ("Plaintiff asserts that the defendants were involved in a conspiracy against him. However, his allegations are entirely conclusory . . . Additionally, a conspiracy claim is not actionable without an actual violation of § 1983, which Plaintiff has failed to show.") (internal citations omitted). Accordingly, the Court finds Plaintiff also cannot state a Section 1983 conspiracy claim.

**B.  Mr. DeSarno**

Plaintiff asserts the same substantive claims against Mr. DeSarno as those he asserts against DPS Defendants.[6]

Plaintiff's factual allegations that implicate Mr. DeSarno are as follows:

> Soon after this incident, I went into the FBI's Dallas Field Office to lodge a complaint with regards to the harassment, stalking and tortuous interference. One of the field agents asked me what I "hoped to accomplish" by my visit. I responded "tell Special Agent in Charge (SAIC) DeSarno to cease and desist with the harassment and stalking (A.K.A. "Disruption").

---

[6] Mr. DeSarno is the Special Agent in Charge of the Dallas Field Office of the FBI. *See* Dkt. 1 at 30; *see generally* Dkt. 27.

> I have written numerous letters of complaint, outlining my concerns to the D.O.J. over several years, which in turn has consistently refused to initiate any type of investigation on my behalf (Exhibit D), so I returned to the Dallas Field Office yet again to lodge another grievance. I told the agent that the FBI, JTTF, and InfraGard were out of control, and once again told him to tell SAIC Matthew DeSarno to "cease and desist."

Dkt. 1 at 30 (footnotes omitted).

> Furthermore, FBI personnel under SAIC DeSarno's authority have been part of (4) a larger civil conspiracy with Texas Department of Safety personnel to retaliate against me and continue to harass me under color of law and subject me to what they refer to so casually as "disruption."

*Id.* at 46. The first two paragraphs indicate that Plaintiff allegedly told an unnamed field agent to tell Mr. DeSarno to "cease and desist." However, this does not constitute any action taken by Mr. DeSarno. Overall, it appears Plaintiff is trying to allege that, by virtue of Mr. DeSarno's position as a supervisor of an FBI office, he is liable for any alleged action taken by the FBI against Plaintiff. As is the case for Section 1983 claims, "vicarious liability is inapplicable to *Bivens* . . . suits . . . ." *Watkins v. Three Admin. Remedy Coordinators of Bureau of Prisons*, 998 F.3d 682, 686 (5th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 676).

It appears Plaintiff has merely grafted Mr. DeSarno onto Plaintiff's allegations against the FBI. Because Plaintiff does not even allege that Mr. DeSarno himself took any action against Plaintiff, the Court finds as to Mr. DeSarno, Plaintiff cannot state a claim on any ground.

### C. State Law Claims

"If a district court has original jurisdiction over at least one claim in a case, it must look to what was traditionally known as 'pendent' or 'ancillary' jurisdiction to assess whether it has jurisdiction over any remaining claims over which it would otherwise lack original jurisdiction." *Griffin v. Lee*, 621 F.3d 380, 384 (5th Cir. 2010) (per curiam) (citing *City of Chicago v. Int'l Coll.*

*Of Surgeons*, 522 U.S. 156, 164–65, (1997)).[7] "[T]he justification for supplemental jurisdiction 'lies in considerations of judicial economy, convenience and fairness to litigants; if these are not present a federal court should hesitate to exercise jurisdiction over state claims. . . . Needless decisions of state law should be avoided both as a matter of comity and to promote justice between the parties, by procuring for them a surer-footed reading of applicable law." *Parker & Parsley Petroleum Co. v. Dresser Indus.*, 972 F.2d 580, 585 (5th Cir. 1992) (quoting *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726 (1966)). The Fifth Circuit's "general rule is to dismiss state claims when the federal claims to which they are pendent are dismissed." *Id.*

The Court has already found Plaintiff cannot state a claim under federal law. There is no reason to depart from the presumption that state law claims should be dismissed when the federal claims to which they are pendent are dismissed. Accordingly, the Court recommends dismissing Plaintiff's state law claims.

### D. Leave to Amend

Ordinarily, a *pro se* plaintiff should be allowed to amend his complaint before claims are dismissed with prejudice. *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009) (per curiam) (citing *Bazrowx v. Scott*, 136 F.3d 1053, 1054 (5th Cir. 1998) (per curiam)). "Granting leave to amend is not required, however, if the plaintiff has already pleaded his 'best case.'" *Brewster*, 587 F.3d at 768 (quoting *Bazrowx*, 136 F.3d at 1054). "[A]t some point, a court must decide that a plaintiff has had fair opportunity to make his case; if, after that time, a cause of action has not been established, the court should finally dismiss the suit." *Schiller v. Alpert Grp.*, 342 F.3d 563, 567 (5th Cir. 2003) (citation and internal quotation marks omitted). The Court may deny leave to

---

[7] Plaintiff and Defendants appear to all be citizens of Texas. As such, diversity jurisdiction is unavailable, as there is not "complete diversity" of the parties. *See McLaughlin v. Miss. Power Co.*, 376 F.3d 344, 353 (5th Cir. 2004) (citing *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267 (1806)).

15

amend where such an amendment would be futile. *See, e.g.*, *Isom v. U.S. Dep't of Homeland Sec.*, No. 4:20-cv-948, 2021 WL 2232052, *3 (E.D. Tex. Apr. 28, 2021), *R. & R. adopted*, 2021 WL 2224345 (E.D. Tex. June 2, 2021) (collecting cases). Furthermore, "'[w]hether leave to amend should be granted is entrusted to the sound discretion of the district court.'" *Lyn-Lea Travel Corp. v. Am. Airlines, Inc.*, 283 F.3d 282, 286 (5th Cir. 2002) (quoting *Quintanilla v. Tex. Television, Inc.*, 139 F.3d 494, 499 (5th Cir. 1998)).

In this case, the Court recommends Plaintiff not be given an opportunity to amend his complaint. Fundamentally, Plaintiff's complaint is frivolous. *See Neitzke v. Williams*, 490 U.S. 319, 325 (1989) ("[A] complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact."). Another federal court has already found *sua sponte* that Plaintiff's allegations as to a number of governmental defendants was frivolous. *See Di Montenegro v. Nat'l Sec. Agency*, No. 116cv01608, 2017 WL 11503454, at *3 (E.D. Va. May 10, 2017) ("Plaintiff has not set forth any plausible legal basis for a complaint against these two Defendants. The Court therefore dismisses the Complaint *sua sponte* as to Defendants . . . as frivolous."). As to the instant Complaint, the factual allegations underlying the purported conspiracy against Plaintiff are "fanciful" and "fantastic." *Neitzke*, 490 U.S. at 325, 328. For example, Plaintiff alleges:

> The FBI has used this nauseating narrative in seven African countries, Florida, Virginia, New York and Texas. In my specific case, given their propensity for what I refer to as foreign database doping and document falsification, I am sure that the FBI had me watch-listed in the seven African countries I frequented and/or lived in.

Dkt. 1 at 17. Further, most of Plaintiff's allegations relate to "the damage the FBI and their partner agencies have wreaked upon [Plaintiff] for close to two decades" Dkt. 1 at 18. These allegations have no specific connection to any Defendant in this matter. Plaintiff's responses to the DPS

16

Motion (Dkt. 17) and the DeSarno Motion (Dkt. 27) also do not suggest Plaintiff has a plausible claim. *See* Dkt. 31-1; Dkt. 37. Plaintiff asserts he has "been targeted with a massive increase in harassment and stalking, frequently by the same individuals, albeit in different commercial locations, who are obviously being apprised of [Plaintiff's] physical location in real time, on a daily basis." Dkt. 37 at 2. As in the Complaint (Dkt. 1), Plaintiff asserts without any factual allegations that Defendants are working "hand-in-hand" with those who are stalking him. *Id.* Ultimately, Plaintiff's allegations as to Defendants in the present case is largely that they are the last government officials he has contacted—not that they have taken any action themselves against Plaintiff. Accordingly, the Court finds it would be futile to grant leave to amend in this case.

### IV.   RECOMMENDATION

For the foregoing reasons, the Court recommends the DPS Motion (Dkt. 17) and the DeSarno Motion (Dkt. 27) be **GRANTED**; and Plaintiff's claims be **DISMISSED WITH PREJUDICE**.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written objections to any proposed findings, conclusions, and recommendations contained in this report shall bar an aggrieved party from appellate review of those factual findings and legal conclusions accepted by the district court, except on grounds of plain error, provided that the party has been served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *see also Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th

Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections from ten to fourteen days).

**So ORDERED and SIGNED this 3rd day of March, 2023.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE